IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Angela Sue Colaner,                         :
                      Plaintiff             :        Civil Action 2:12-cv-00716

           v.                               :        Judge Marbley

Carolyn W. Colvin,                          :        Magistrate Judge Abel
Commissioner of Social Security,
                      Defendant             :

**REPORT AND RECOMMENDATION**

Plaintiff Angela Sue Colaner  brings this action under 42 U.S.C. §§405(g)  for review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance benefits.  This matter is before the  Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**<u>Summary of Issues.</u>**

Plaintiff Angela Sue Colaner maintains she became disabled in November 2005, at age 38, by lumbar disc disease that has required three surgeries. She was last insured for Social Security disability benefits September 30, 2006. The administrative law judge found that during the period November 2005 through September 30, 2096 Coaner had the ability to perform a full range of work having medium exertional demands. Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge erred in failing to conclude that plaintiff's impairments met or equaled Listing 1.04A;
- The administrative law judge failed to properly evaluate plaintiff's credibility;

- The administrative law judge failed to incorporate all of plaintiff's limitations in his residual functional capacity assessment; and,
- The administrative law judge failed to obtain testimony from a medical expert for the entire period of plaintiff's alleged disability.

**Procedural History.**  Plaintiff Angela Sue Colander filed her application for disability insurance benefits on January 5, 2009, alleging that she became disabled on November 28, 2005, at age 38, by degenerative disc disease, panic attacks, high blood pressure, and high cholesterol.  (R. 97, 125.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On February 2, 2011, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 14.)  A vocational expert and a medical advisor also testified.  On March 2, 2011, the administrative law judge issued a decision finding that Colaner was not disabled within the meaning of the Act.  (R. 72.)  On June 6, 2012, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 1-3.)

**Age, Education, and Work Experience.**  Angela S. Colaner was born July 8, 1967.  (R. 97.) She completed the eleventh grade. She attended special education classes. She did not finish cosmetology school.  (R. 132.)  She has worked as a cashier, assistant manager and manager in retail, as a waitress and manager of a fast food restaurant,  a warehouse worker, and a nursery laborer. She last worked February 11, 2007.  (R. 125-26.)

2

**Plaintiff's Testimony.**  The administrative law judge fairly summarized 's testimony as follows:

> At the time of the claimant's alleged onset of disability, she was 37 years old. At the time of this decision, she is 43 years old. The claimant has approximately an eleventh grade education, and is currently in the process of completing a high school education through a home study course. The claimant testified to leaving work as a convenience store manager in November of 2005, because her back impairment prevented her from lifting the heavy cases in the stock room. The claimant testified she had back surgery in 2003 and "bounced" back (medically). She stated her doctor diagnosed DDD, in 2005 when the claimant returned to the doctor because of pain on the left side of her back. The claimant stated she pain on the right side of her back in 2008. Claimant testified she had constant pain in her back and legs. The claimant testified that the medication helped her symptoms but they also made her drowsy. The claimant stated she did not believe she could do a sedentary job because her medication made her drowsy and she used a cane to walk. The claimant stated she did not leave the home and she slept in a recliner because she could not lie down. The claimant stated her back is more painful in cold temperatures and she was prescribed a cane for use as needed, since her back surgery in 2008. The claimant stated she wore a back brace after her latest surgery, and was prescribed a new brace in January of 2011. The claimant stated she exercised by walking up and down her driveway. The claimant stated she drove five miles to a store every week. The claimant stated [she] did not do physical therapy and had no injections since her last surgery in May of 2010.

(R. 67.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize that evidence.

3

**Physical Impairments.**

Mirela Crisan, M.D., Treating Primary Care Physician. In August 2006, Dr. Crisan became plaintiff Colaner's primary care physician. On examination, Dr. Crisan noted pain behaviors. Colaner had difficulty changing positions and exhibited a positive straight leg raising test.  Plaintiff reported lower back pain on her left side and pain in her left leg. Dr. Crisan referred Colaner to Dr. Mallik, a neurosurgeon who had performed a laminectomy on her in 2003. (R. 535-36.)

On November 3, 2006, Dr. Crisan noted that Colaner could not tolerate physical therapy. (R. 533.) She could lift with her left lower extremity. She had an antalgic gait. (R. 534.) Colaner had numbness on the left lateral side of her calf. She had decreased deep tendon reflexes and a positive Babinksi test on the left lower extremity. (R. 535.)

On April 24, 2007, Colaner reported that taking Percocet 4-5 times per day and Flexeril made her very sleepy and drowsy in the morning. (R. 201.) On June 29, 2007, treatment notes indicate that Colaner started experiencing left sided pain. The pain was intermittent like a cramp or a sharp pain. SLR was positive on the left side. (R. 203.) On July 2, 2007, the treatment note indicates that her pain was well-controlled. (R. 204.) On August 14, 2007, SLR sitting was positive on the left and crossover right. (R. 205.) On September 11, 2007, plaintiff reported that low back pain with radiation into the left buttock had been worse. (R. 206.) On November 5, 2007, Colaner reported that she had to constantly change positions. (R. 208.)

4

A July 18, 2007 MRI of plaintiff's lumbar spine showed minimal postsurgical scar to the left of the midline at L5-S1. (R. 222.)

On January 8, 2008, Colaner had numbness of the calves. (R. 210.) On February 8, 2008, she had lumbar tenderness to palpation. She had positive SLR on the right and left. (R. 211.) On February 22, 2008, it was reported that plaintiff was doing well. (R. 212.) On March 13, 2008, plaintiff reported fluctuations in her pain. (R. 213.)

An April 1, 2008 MRI of plaintiff's lumbar spine revealed postoperative changes compatible with a L5-S1 hemilaminotomy. There was no evidence of residual/recurrent disc protrusion. There was mild degenerative disc disease present but no evidence of stenosis. (R. 198.)

Robert Stephenson, D.O.  On November 3, 2008, Dr. Stephenson examined Colaner for consideration of lumbar epidural steroid injections. In 2002, she began experiencing low back pain with radiation of pain and numbness down her bilateral lower limbs. She reported failed conservative treatment and had an L5-S1 discectomy. The surgery reduced a significant portion of her discomfort. In 2007, her symptoms began to return. Her discomfort was aggravated when she was involved in car accident.

Colaner reported agonizing back pain, greater on the right than left. She had burning and numbing pain down her bilateral lower limbs into her feet. Sitting increased her pain. There was no lower limb weakness. On physical examination, she appeared very uncomfortable sitting on the examination table. She ambulated with a slow and hesitant gait. Her lumbar range of motion was limited to more than 10° in any plane.

5

There was no lumbosacral tenderness to palpation. Her lower limb sensation to light touch was normal. Her lower limb muscle stretch reflexes bilaterally were symmetrical at 2+/4 at the knees and ankles. She had positive straight leg raise both in the seated and supine positions. Lower limb muscle strength was somewhat give away, but appeared 5/5 with encouragement.  She had full range of motion in her lower limbs. There was positive bilateral Fabere's for hip joint pathology. There was tenderness over the right greater trochanter. Muscle bulk was symmetrical.

Dr. Stephenson diagnosed acute right lumbosacral radiculopathy; history of L5-S1 hemilaminectomy; right greater trochanteric bursitis; and bilateral hip pain. (R. 228-30.)

Plaintiff received epidural injections on November 4 and 19, 2008. (R. 225-26.) On December 3, 2008, plaintiff received her third epidural injection. She described the first two injections as somewhat helpful. (R. 225.)

A November 3, 2008 MRI of plaintiff's lumbar spine revealed an interval development of a right paracentral disc herniation at L5-S1 with inferior migration and slight superior migration resulting in mild to moderate effacement of the right S1 nerve root, mild theca sac effacement and narrowing of the right lateral recess. There was minimal disc bulging at T12-L1. (R. 232.)

A November 3, 2008 x-ray of plaintiff's bilateral hips showed a normal pelvis and hips. (R. 223.)

<u>Gunwant S. Mallik, M.D., Treating Neurosurgeon</u>. In July 2003, Dr. Mallik per-
formed a lumbar diskectomy at L5-S1 on the right. (R. 326-28.) On September 22, 2006,
Dr. Mallik examined Colaner based on complaints of left-sided leg pain. On examin-
ation, she had positive straight leg raise for radicular pain on the left leg. She had
normal strength in her muscle groups, and her reflexes were preserved. There was
decreased sensation to pinprick in both the left and right L5-S1 dermatomes. She walk-
ed with a cane and favored the left side in standing, sitting and walking. (R. 305.)

On October 27, 2006, Dr. Mallik noted that Colaner had not responded to the
diskectomy as expected. Plaintiff complained of new pain in the right lower extremity.
She continued to have discomfort in the left leg. Dr. Mallik found a negative straight leg
raise for radicular pain on the right, but on the left side she had significant hamstring
tightness. No motor deficits were noted. An MRI showed no evidence of recurrent disc
protrusion. (R. 270-71, 274.)

On April 2, 2008, Dr. Mallik examined plaintiff. Colaner reported increased pain
in the back on the right side and radiating into the right lateral thigh. Her MRI showed
no new changes to explain the pain. Dr. Mallik recommended that she see a pain spec-
ialist. (R. 268.)

On December 3, 2008, Dr. Mallik evaluated plaintiff for complaints of right sciatic
pain following a car accident. Her neurological examination revealed an antalgic gait
favoring the right side with decreased sensation in the L5-S1 dermatones. She was able
to stand on her toes and heels without much difficulty. A recent MRI scan showed a

7

large disk free fragment in the lateral recess of the L5-S1 dermatones, which was a significant difference from an earlier scan. Dr. Mallik recommended that Colaner undergo surgical decompression of the L5-S1 nerves with microdiskectomy. (R. 266-67.)

On December 8, 2008, Colaner underwent a right L5-S1 discectomy. (R. 245-48.) On December 31, 2008, plaintiff reported some hamstring tightness in the right leg causing some radicular pain. Dr. Mallik showed her how to walk without a cane to make the body motions more natural and neutral. (R. 265.)

On January 21, 2010, plaintiff underwent a bilateral lower limb EMG, which showed peripheral neuropathy that is both axonal and demyelinating in the lower limbs bilaterally and the right upper limb. Plaintiff had S1 radiculopathy that was moderate and chronic greater on the right than the left. There was no electrodiagnostic evidence of any focal neuropathies, plexopathies or other radiculopathies on the right or left sides. (R. 300-02.)

On May 25, 2010, plaintiff underwent a third surgery at the L5-S1 level. (R. 446-48.)

**Psychological Impairments.**

Joan Williams, Ph.D. On March 7, 2009, Dr. Williams, a State agency reviewing psychologist, completed a psychiatric review technique. There was insufficient evidence to substantiate the presence of an anxiety disorder. (R. 283-96.) Karen Terry, Ph.D. reviewed the evidence of record and affirmed the March 7, 2009 assessment as written. (R. 298.)

## Administrative Law Judge's Findings.

1.   The claimant last met the insured status requirements of the Social Security Act on September 30, 2006.

2.   The claimant did not engage in substantial gainful activity during the period from her alleged onset date of November 28, 2005 through her date last insured of September 30, 2006 (20 CFR 404.1571 *et seq*.).

3.   Through the date last insured, the claimant had the following severe impairment: History of low back pain, status post lumbar surgery in 2003, with degenerative disc disease (DDD) (20 CFR 404.1520(c)).

4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of medium work as defined in 20 CFR 404.1567(c).

6.   Through the date last insured, the claimant was capable of per-forming past relevant work as a nursery laborer. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.   The claimant was not under a disability, as defined in the Social Security Act, at any time from November 28, 2005, the alleged onset date, through September 30, 2006, the date last insured (20 CFR 404.1520(f)).

(R. 65-71.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings

of the Commissioner as to any fact, if supported by substantial evidence, shall be con-

clusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind

9

might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389,

401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is

"'more than a mere scintilla.'"  *Id.*  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.

1976).  The Commissioner's findings of fact must be based upon the record as a whole.

*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining

whether the Commissioner's decision is supported by substantial evidence, the Court

must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers*

*v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**   Plaintiff argues that the decision of the Commissioner

denying benefits should be reversed because:

- The administrative law judge erred in failing to conclude that plaintiff's

  impairments did not meet or equal Listing 1.04A. Plaintiff maintains that she

  met or equaled the criteria set forth at Listing 1.04A from at least August 1,

  2006. An impairment will be found medically equivalent to that Listing if the

  claimant has other findings related to the impairment that are at least of equal

  medical significance to the required criteria. On August 1, 2006, plaintiff dis-

  played neuroanatomic distribution of pain, limitation of motion of the spine,

  and positive SLR testing on the left. On August 3, 2006, plaintiff displayed the

additional symptoms of sensory and reflex loss. Although the record does not document motor loss with associated muscle weakness, the severity of the documented criteria in addition to plaintiff's pain and medication side effects, and the need to ambulate with a cane are of equal medical significance. Plaintiff argues that the administrative law judge failed to articulate any basis for his conclusion that plaintiff did not meet or equal the listing.

- The administrative law judge failed to properly evaluate plaintiff's credibility. Plaintiff maintains that her testimony concerning pain, limitation of motion, and her other symptoms were well-supported by the objective evidence of record. The presence of scar tissue adjacent to the left S1 nerve root provided an objective basis for her left-sided low back pain and radicular symptoms affecting her left lower extremity. She required the use of narcotic pain medications and a cane to ambulate. Symptoms of significant depression and anxiety were also documented. Plaintiff's treatment history, which included unsuccessful conservative measures and three back surgeries, supports a finding that plaintiff's allegations were credible.

- The administrative law judge failed to incorporate all of plaintiff's limitations in his residual functional capacity assessment. Plaintiff argues that the administrative law judge erred when he concluded she could perform medium work. In addition to back and leg pain, plaintiff has great difficulty ambulating and changing position. She took up to eight Percocet a day, which caused

11

drowsiness. The administrative law judge failed to include any limitations relating to the cognitive effects of plaintiff's pain levels, the side effects of her medications, her inability to remain in one position for any prolonged period of time, her difficulties bending and stooping, her inability to stand and/or walk for any length of time, and her need to use a cane to ambulate. Plaintiff maintains that the administrative law judge erred in failing to include these limitations in formulating a residual functional capacity.

• The administrative law judge failed to obtain testimony from a medical expert for the entire period of plaintiff's alleged disability. Plaintiff argues that the administrative law judge erred by not obtaining testimony from the medical expert, Dr. Kendrick, concerning the applicability of any listing prior to her date last insured or her RFC during that period.

**Analysis.**

Listing 1.04A. The administrative law judge concluded that plaintiff did not meet or equal Listing 1.04 because the record did not show that plaintiff had compromise of a nerve root (including the cauda equina) or the spinal cord with evidence of nerve root compression characterized by a neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and positive straight-leg raising.

Plaintiff concedes that the record does not document motor loss with associated muscle weakness. Instead, plaintiff argues that her impairment equals the Listing because the severity of her impairment in combination with the medications effects are of equal medical significance. Plaintiff argues that on August 1, 2006, she displayed neuroanatomic distribution of pain, limitation of motion of the spine, and positive SLR testing on the left. On August 3, 2006, she displayed sensory and reflex loss.

The Dr. Ronald E. Kendrick, an orthopedic surgeon, testified as a medical expert at plaintiff's hearing before the administrative law judge. Dr. Kendrick testified that from a month before her December 2008 surgery until she recovered from her May 2010 laminectomy and fusion plaintiff met or equaled Listing 1.03. (R. 41-42.) However, he further testified she did not meet or equal a listing during the period September 2006 up until a month or so before the December 2008 surgery. (R. 48-49.) He testified that an April 2008 MRI (R. 274) showed no evidence or a recurrent herniated disc. "So you, you can't meet a listing or equal a listing without evidence of nerve root compression. There's no evidence of nerve root compression with her symptoms at that time." (R. 48-49.) Dr. Kendrick noted the presence of nerve irritation, not nerve compression. (R. 49.) As a result, the administrative law judge's conclusion that plaintiff did not meet or equal a Listing prior to her date last insured is supported by substantial evidence.

Credibility Determination. Pain is an elusive phenomena.  Ultimately, no one can say with absolute certainty whether another person's subjectively disabling pain and other symptoms preclude all substantial gainful employment.  The Social Security Act

13

requires that the claimant establish that he is disabled. Under the Act, a "disability" is defined as "inability to engage in any substantial gainful activity *by reason of any medically determinable or mental impairment* which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §423(d)(1)(A) (emphasis added).

Under the provisions of 42 U.S.C. §423(d)(5)(A), subjective symptoms alone cannot prove disability. There must be objective medical evidence of an impairment that could reasonably be expected to produce disabling pain or other symptoms :

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

The Commissioner's regulations provide a framework for evaluating a claimant's symptoms consistent with the commands of the statute:

> (a) *General*. In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective medical evid-

ence, we mean medical signs and laboratory findings as defined in §404.1528(b) and (c). By other evidence, we mean the kinds of evidence described in §§404.1512(b)(2) through (6) and 404.1513(b)(1), (4), and (5) and (e). These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work. However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you. (Section 404.1527 explains how we consider opinions of your treating source and other medical opinions on the existence and severity of your symptoms, such as pain.) We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

20 C.F.R. §404.1529(a). A claimant's symptoms will not be found to affect his ability to

work unless there is a medically determinable impairment that could reasonably be

expected to produce them. 20 C.F.R. § 404.1529(b). If so, the Commissioner then eval-

uates the intensity and persistence of the claimant's pain and other symptoms and

determines the extent to which they limit his ability to work. 20 C.F.R. § 404.1529(c). In

making the determination, the Commissioner considers

> all of the available evidence, including your history, the signs and lab-
> oratory findings, and statements from you, your treating or nontreating
> source, or other persons about how your symptoms affect you. We also
> consider the medical opinions of your treating source and other medical
> opinions . . . .

*Id.*

In this evaluation of a claimant's symptoms, the Commissioner considers both

objective medical evidence and "any other information you may submit about your

symptoms." 20 C.F.R. § 404.1529(c)(2). The regulation further provides:

> Because symptoms, such as pain, are subjective and difficult to quantify,
> any symptom-related functional limitations and restrictions which you,
> your treating or nontreating source, or other persons report, which can
> reasonably be accepted as consistent with the objective medical evidence
> and other evidence, will be taken into account as explained in paragraph
> (c)(4) of this section in reaching a conclusion as to whether you are dis-
> abled. We will consider all of the evidence presented, including informa-
> tion about your prior work record, your statements about your symptoms,
> evidence submitted by your treating or nontreating source, and observa-
> tions by our employees and other persons. Section 404.1527 explains in
> detail how we consider and weigh treating source and other medical
> opinions about the nature and severity of your impairment(s) and any
> related symptoms, such as pain. Factors relevant to your symptoms, such
> as pain, which we will consider include:
>
> > (I) Your daily activities;
>
> > (ii) The location, duration, frequency, and intensity of your pain or
> > other symptoms;
>
> > (iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). When determining the extent to which a claimant's symptoms limit his ability to work, the Commissioner considers whether the claimant's statements about the symptoms is supported by or inconsistent with other evidence of record:

In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4).

17

SSR 96-7p explains the two-step process established by the Commissioner's regulations

for evaluating a claimant's symptoms and their effects:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. . . .

> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

> When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

> 1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Case law interpreting the statute and regulations. At the outset, it is important to keep in mind that symptoms are the claimant's "description of [his/her] physical or mental impairment."  20 C.F.R. § 404.1528(a). Inevitably, evaluating symptoms involves making credibility determinations about the reliability of the claimant's self-report of his symptoms. *Smith ex rel E.S.D. v. Barnhart*, 157 Fed.Appx. 57, 62 (10th Cir. December. 5, 2005) (not published)("Credibility determinations concern statements about symptoms.")

"Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain." *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996). That test was first set out in *Duncan v. Secretary of Health and Human*

*Services*, 801 F.2d 847, 853 (6th Cir. 1986). First, the Court must determine "whether there is objective medical evidence of an underlying medical condition." If so, the Court must then

> examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853. Any "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers,* 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir.1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir.1981)). The ALJ is required to explain her credibility determination in her decision, which "'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *See id*. (quoting SSR 96-7p). Furthermore, the ALJ's decision must be supported by substantial evidence. *Rogers,* 486 F.3d at 249.

 Discussion of ALJ's credibility determination. The administrative law judge concluded that plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms but that her allegations concerning the intensity, persistence, and limiting effects of those symptoms were not credible. The administrative law judge relied on an October 2006 MRI showing post-surgical changes

left laminotomy L5-S1 with post-surgical scar in the epidural space. There was no evidence recurrent disc herniation or stenosis.

The administrative law judge noted that in August 2006, Dr. Crisan stated plaintiff's symptoms were controlled by pain medication. (R. 68.) Plaintiff reported to Dr. Mallik that she had not bothered to refill her prescribed medication, which suggested to the administrative law judge that her symptoms were not especially troublesome. (R. 68-69.) In July 2007, plaintiff reported that her lower back pain was controlled with medication. (R. 69.)

In October 2006, Dr. Crisan found no leg or muscle weakness, although she had an antalgic gait and sat carefully. (R. 69.) The administrative law judge also relied on the fact that plaintiff reported that she was working part time in January 2007. Although the work activity did not constitute substantial gainful activity, the administrative law judge believed that this work activity suggested that plaintiff's daily activities were somewhat greater than she had reported. *Id.* In July 2007, plaintiff reported her low back pain was controlled with medication. The administrative law judge's credibility determination is supported by substantial evidence in the record.

<u>Residual Functional Capacity and Testimony of Medical Expert</u>. Plaintiff argues that the administrative law judge erred by failing to obtain medical expert testimony concerning the entire period of alleged disability. The administrative law judge specifically questioned whether plaintiff met or equaled Listing 1.04A prior to her last insur-

ed date as discussed above. *See* R. 48-49. The administrative law judge did not question the medical expert concerning plaintiff's residual functional capacity.

Here, the record does not contain any evidence to support the administrative law judge's conclusion that plaintiff could perform medium work. The administrative law judge did not ask the medical expert his opinion as to plaintiff's residual functional capacity. Nor does the record contain physical residual functional capacity assessments completed by State agency reviewing physicians. The administrative law judge assumed that plaintiff could continue to perform her past relevant work as a nursery laborer. There is no basis for his conclusion in the record. As a result, this case should be REMANDED. On remand, the administrative law judge should use a medical expert to assist him in considering the evidence relevant to determining plaintiff's residual functional capacity prior to her date last insured.

Conclusion. For the reasons stated above, I RECOMMEND that this case be REMANDED for the administrative law judge to use a medical expert to assist him in considering the evidence relevant to determining plaintiff's residual functional capacity prior to her date last insured.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


      s/Mark R.  Abel         
United States Magistrate Judge